IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| INTERFACE GROUP – NEVADA, INC., A Nevada corporation and VENETIAN CASINO RESORT, LLC, a Delaware limited liability company,<br><br>  Plaintiff,<br><br>  vs.<br><br>MEN'S APPAREL GUILD IN CALIFORNIA INC., a California corporation and ADVANSTAR COMMUNICATIONS, INC., a New York corporation,<br><br>  Defendant. | 2:04-CV-00351-BES-GWF<br><br>ORDER |

Before the Court is Plaintiff's Motion for Partial Summary Judgment (#103) filed on February 9, 2006 and Defendant's Counter Motion for Partial Summary Judgment (#113) filed on March 13, 2006. Defendant filed its Opposition to Plaintiff's Motion for Partial Summary Judgment (#113) on March 13, 2006. Plaintiff filed its Reply in Support of Motion for Partial Summary Judgment on March 27, 2006. Plaintiff filed its Opposition to Defendant's Motion for Partial Summary Judgment (#119) on March 27, 2006. Defendant filed its Reply in support of Motion for Partial Summary Judgment (#122) on April 19, 2006.

Also before the court is Defendant's Motion for Summary Judgment (#127) filed on April 28, 2006. Plaintiff filed its Opposition to Defendant's Motion for Summary Judgment (#135) on June 14, 2006. Defendant filed its Reply in Support of Motion for Summary Judgment (#141).

## I. BACKGROUND

Plaintiff Interface ("Interface") owns and operates the Sands Expo in Las Vegas, Nevada. The Sands Expo is a convention hall and exposition center that licenses space to users for the purpose of holding trade shows, public exhibitions, and conventions. Defendant Advanstar ("Advanstar") is the owner, manager, and producer of trade shows. Included among these is the MAGIC Marketplace apparel industry show ("MAGIC"). The MAGIC trade show is comprised of different segments, one of which is Women's Wear Daily MAGIC ("WWDMAGIC").

On July 16, 1999, Interface entered into a series of facilities license agreements with Magic International, now wholly owned by Advanstar, in which Magic International allegedly agreed to hold the WWDMAGIC segment of the Magic show at the Sands Expo every February and August from August 1998 through August 2005.

In 2002 Interface and Advanstar representatives began discussing Advanstar's desire to enter into agreements to hold the 2006-2008 WWDMAGIC shows at the Sands Expo. In the context of these discussions, Advanstar requested concessions from Interface with regard to other contracts between Interface and Advanstar subsidiaries as consideration for its promise to hold the '06-'08 WWDMAGIC shows at the Sands Expo. Interface granted these concessions.

Specifically, Advanstar was allowed to reduce the amount of space it had requested for the 2004 and 2005 Adult Entertainment Expos ("AAE shows") without penalty, and it received a discounted rental rate for the space it had reserved for its Luxury Travel Show. The total value of the concessions is allegedly 333,525 dollars. The agreement regarding

the concessions was not committed to a writing.

On February 24, 2004, after the benefit of the concessions had been provided, Advanstar informed Interface that it would no longer be holding any future WWDMAGIC shows at the Sands Expo. Instead, Advanstar proposed that it hold a different event, "Community," in the space it had reserved for the August 2004 WWDMAGIC show, but Interface refused. Thus, the instant litigation was commenced.

## II. ANALYSIS

### A. Standard

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is "not warranted if a material issue of fact exists for trial." Ribitzki v. Canmar Reading & Bates, 111 F.3d 658, 661 (9th Cir. 1997). A material fact is one that "might affect the outcome of the suit under the governing law . . . ." Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)). Further, any dispute regarding a material issue of fact must be genuine— the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of proving the absence of a genuine issue of material fact lies with the moving party; accordingly, "[t]he evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to the nonmoving party." Id. (citing Liberty

Lobby, 477 U.S. at 255); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). Nevertheless, if the moving party presents evidence that would call for judgment as a matter of law, then the opposing party must show by specific facts the existence of a genuine issue for trial. Liberty Lobby, 477 U.S. at 250; FED. R. CIV. P. 56(e).  To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586. "If the evidence [proffered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249–50.

Where, as here, the parties file counter motions for summary judgment, the court must consider each party's motion separately to determine whether any genuine issue of material fact exists and that party is entitled to a judgment under Rule 56. Western Land Exchange Project v. U.S. Bureau of Land Mgmt., 315 F. Supp.2d 1068, 1075 (D. Nev. 2004).  Counter motions for summary judgment do not necessarily mean that there are no disputed issues of material fact, and do not necessarily permit the judge to render judgment in favor of one side or the other. Starsky v. Williams, 512 F.2d 109, 112 (9th Cir. 1975).  In making these determinations, the court must evaluate the evidence offered in support of each cross-motion. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136-37 (9th Cir. 2001).

**1. Plaintiff's Motion for Partial Summary Judgment (#103) and Defendant's Counter Motion for Partial Summary Judgment**

In Interface's Motion for Partial Summary Judgment, Interface claims that it is entitled to summary judgment as to its sixth and seventh claims for relief. (See Mot. Partial Summ. J. (#103).)  Plaintiff's sixth claim for relief alleges that Advanstar's actions constitute an anticipatory repudiation of their agreement to hold the '06-'08

WWDMAGIC shows at the Sands Expo. (Am. Compl. (#43) ¶¶ 55-58.) Plaintiff's seventh claim for relief seeks specific performance and damages on the theory of promissory estoppel. Id. at ¶¶ 59-60. Advanstar claims that it is entitled to summary judgment on these same claims. (Counter Mot. Summ. J. (#113) 8.)

Interface argues that in granting the aforementioned concessions, it detrimentally relied on Advanstar's promise to hold the '06-'08 WWDMAGIC shows at the Sands Expo thus entitling it to damages on a promissory estoppel theory. (Mot. Partial Summ. J. (#103) 9-14.) Specifically, Interface contends that had it not granted the concessions it would have been entitled to full fees under the terms of the contracts between itself and AAE and Luxury Travel Id. at 9-11.

Advanstar claims, however, that it is entitled to summary judgment as to claims six and seven, not Interface. (Counter Mot. Summ. J. (#113) 11-14.) Advanstar argues that though it did receive the benefit of the concessions it sought, Interface was able to re-let the space it vacated thereby mitigating any detriment associated with its broken promise and precluding recovery on a promissory estoppel theory. Id. Advanstar also claims that since Interface was able to mitigate its damages, granting monetary relief here would result in a double-recovery by Interface, a concept that equity does not countenance. Id. at 12.

"To establish promissory estoppel four elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) and he must have relied to his detriment on the conduct of the party to be estopped." Cheger, Inc. v. Painters & Decorators Joint Committee, Inc., 98 Nev. 609, 614, 655 P.2d 996, 998-999 (1982). Even so, "estoppel cannot be made an instrument

of gain or profit; the party invoking its aid can recover no more . . . than an amount which is fair and even compensation for the injury resulting directly and proximately from his own act or omission, performed in a actual reliance upon the representation . . . on which the estoppel is claimed." Johnson v. Nevada Packard Mines Co., 272 F. 291, 309 (D. Nev. 1920).

The only element of promissory estoppel in dispute here is the fourth, (Counter Mot. Summ. J. (#113) 11-13); thus, if a genuine issue of material fact exists as to whether Interface detrimentally relied on Advanstar's promise to hold the '06-'08 WWDMAGIC shows at the Sands Expo, the claims based on promissory estoppel must survive.

It is not disputed that Interface was able to re-let the space vacated by Advanstar to IBM. (Reply Supp. Mot. Summ. J. (#119) 6-7.) Interface argues, though, that despite that fact it was not able to recoup the losses incurred as a result of Advanstar's broken promise. Id. Interface says that it originally contracted with Advanstar to house the AAE shows in halls B and C of the Sands Expo. It claims that when it released Advanstar from its obligation as to one of those halls, it did so with respect to either hall B or C specifically. Id. Interface claims that Advanstar then approached it seeking to have the AAE shows moved into hall A, as opposed to B or C, and that Interface complied with the request. Id. Interface asserts that Advanstar therefore remained obligated to pay for either hall B or C in the amount of 157,500 dollars for both 2004 and 2005 (or 315,000 dollars). Id.

Interface acknowledges that it was able to recoup some of this amount by re-leasing halls B and C to IBM, but claims that at most it was able to secure 121,600 dollars in rent for each of the 2004 and 2005 (or 243,200 dollars). Id. As such, Interface appears to assert a total amount of detrimental loss as to the 2004 and 2005

AEE shows of 71,800 dollars. Id.

Interface also claims that it did not recoup the losses incurred as a result of the concessions granted with respect to the Luxury Expo Show. Id. 12-13. Interface contends that it gave a discounted rate for move-in days and show days and that it allowed the use of conference rooms at a reduced rate. Id. Interface also claims that it allowed the Luxury Travel Show to use more space than it had contracted for. Id. Interface argues that the total value of these concessions is 18,525 dollars, for which no mitigation occurred. Id. The total damages apparently asserted, then, is 90,325 dollars (71,800 dollars for the 2004 and 2005 AEE shows plus 18,525 dollars for the 2003 Luxury Travel Show).

Advanstar counters that Interface was able to recover its losses as to the 2004 and 2005 AEE concessions as well as the 2003 Luxury Travel Show concessions. (Reply Support Counter Mot. Summ. J. (#122) 4-7.) With respect to the 2004 and 2005 AEE contracts, Advanstar says it originally contracted for the use of halls B and C for an eight day period in each year—January 5, 2004 to January 12, 2004, and January 3, 2005 to January 10, 2005. Id. Advanstar claims that after it was released from its obligation to use both halls for 2004, Interface re-let halls B and C for eight and eleven days, respectively—January 9, 2004 to January 16, 2004, and January 6, 2004 to January 16, 2004. Id. Advanstar also says that in 2005 Interface re-let halls B and C for ten and eleven days, respectively—January 5, 2005 to January 14, 2005, and January 4, 2005 to January 14, 2005. Id.

Advanstar claims that Interface was consequently able to recoup 182,400 dollars in 2004 and 212,800 dollars in 2005. Id. Advanstar contends that the total rent collected from these leases should be counted as mitigating Interface's damages despite the fact that the time periods for which they were re-let both exceed the terms

of the original AEE contracts and overlap with those terms such that IBM only occupied halls B and C for a portion of the time for which AEE had originally contracted. Id.

Advanstar argues further that even if the recovered rent was not considered a mitigation of damages, Interface's collection of revenue from the ancillary services related to the IBM show was sufficient to make up for the loss allegedly attributable Advanstar. Id. at 7. Advanstar also claims that there is no admissible evidence in support of Interface's claim that it was not sufficiently compensated for the 2003 Luxury Expo Show. (Reply Support Counter Mot. Summ. J. (#122) 8-9).

As the foregoing discussion indicates, Interface and Advanstar calculate the potential damages with respect to Interface's reliance differently. The dispute is not insubstantial, nor is it a matter of simple addition or subtraction. In part, resolution of the dispute depends on a view of the nature of Interface's reliance; for example, whether Interface had sufficient opportunity to hedge its own commitment to Advanstar by courting IBM as a replacement tenant before it granted Advanstar concessions for 2004 and 2005 is a question that may need to be resolved to determine the extent of the damages in this case.

Moreover, given the present stage of the litigation, Interface has supported its claim of reliance with sufficient evidence. The Court finds that the fact that concessions of some value were granted, as evidenced by the deposition testimony of Robert Krakoff, (Mot. Partial Summ. J. (#103), Ex. 2 at 88), the former chief executive officer of Advanstar, and the Affidavit of Richard Heller, id. at Ex. 1 at ¶ 10, Interface president and general manager, in connection with the fact that the space Advanstar reserved for 2004 and 2005 ultimately went unused for a some portion of the time originally contracted for, (Reply Supp. Mot. Summ. J. (#122) 5-6), is enough to satisfy Interface's evidentiary burden as to the reliance issue.

The Court acknowledges Advanstar's evidentiary objections but hereby overrules them as they relate to the aforementioned evidence.  Advanstar objects to paragraph ten of Heller's affidavit as lacking a foundation in personal knowledge.  However, there is no indication from the affidavit that Heller does not have personal knowledge of the concessions granted.  Beyond that, the requirements of an affidavit in general is that the information therein be based on personal knowledge.  And here Advanstar has given the Court no reason to suspect that Heller does not have the requisite knowledge.

The Court also takes note of Advanstar's objection to Eric Bello's affidavit, which serves as evidence of the value of the concessions granted to Advanstar under the 2004 and 2005 AEE contracts as well as under the 2003 Luxury Expo Show contract. (Objections Proposed Evidence (#114) ¶ 3B.)  While it is true that a party normally must introduce a contract itself in order to prove its terms, the absence of the relevant contracts at this point do not eliminate a genuine issue of material fact as to their terms, it creates one.  As such, even granting Advanstar that Bello's testimony as to the value of the concessions would likely be inadmissible at trial, the failure to present the contracts here does not preclude the Court from finding that genuine issues of material fact exist such that judgment as a matter of law is not warranted.  Therefore, the Court cannot conclude that either party is entitled to summary judgment as to claims six and seven.

**2. Defendant's Motion for Summary Judgment (#122)**

In its Motion for Summary Judgment, Advanstar claims that it is entitled to summary judgment with respect with respect to all of Interface's remaining claims—i.e., those not considered under its Counter Motion for Summary Judgment.  (See Mot. Summ. J. (#127).)  These include Plaintiff's claims for relief one through four. Advanstar also contends that it is entitled to summary judgment on its counterclaims for breach of contract.  Id. at 25-26.

Interface claims one through four are based on the facilities license agreements between Advanstar and Interface concerning the August 2004, February 2005, and August 2005 WWDMAGIC shows (" '04-'05 agreements"). (Compl. (#47) ¶¶ 35-54.) These agreements allegedly reflect the understanding of the parties that the '04-'05 WWDMAGIC shows were to be be held at the Sands Expo. (Mot. Summ. J. (#127) 2-3.) However, as noted above, on February 24, 2004, Advanstar notified Interface that it would no longer be holding the '04-'05 WWDMAGIC shows at the Sands Expo. (Compl. (#47) ¶ 25.) Advanstar did, though, propose that it use the space it had rented for the August '04 WWDMAGIC show to house the Community event. (Opp'n Mot. Summ. J. (#135) 16.) But Interface refused. Id. Thus, in claims one through four Interface contends that by refusing to hold the WWDMAGIC show at the Sands Expo from '04-'05, Advanstar materially breached the '04-'05 agreements as well as the implied covenants of continuous operation and good faith and fair dealing. (Am. Compl. (#47) ¶¶ 35-51.)

Turning first to Advanstar's claim that it is entitled to summary judgment on Interface's claims one through four, Advanstar suggests that no mandatory use provision existed in the '04-'05 agreements, either express or implied. Advanstar claims, then, that it was under no obligation to hold WWDMAGIC there, or any other show for that matter, and as a result it cannot be held liable for breach of contract. Id. at 14-22. Alternatively, Advanstar claims that even if such a provision does exist, Advanstar satisfied its terms by forfeiting its reservation fee and its basic fee. Id. at 23-25.

Interface, of course, objects. Interface claims that a mandatory use provision is implied by the language of the contract–specifically, that Advanstar was requried to hold WWDMAGIC at the Sands Expo. (Opp'n Mot. Summ J. (#135) 20-29.) Interface also claims that the liquidated damages provision does not limit its ability to seek additional

money damages. Id.

While the contractual language at issue does not suggest the existence of an express mandatory use provision, the possibility of an implied mandatory use provision remains viable. Under Nevada state law, the Court may conclude that an implied provision to use space for a particular purpose exists where (1) the implied duty arises from the language used; (2) where the implied duty appears from that language that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) where the implied duty is justified on the grounds of legal necessity; and (4) where it can be rightfully assumed that it would have been made if attention had been called to it. First Am. Bank & Trust Co. v. Safeway Stores, 154 Ariz. 584, 586, 729 P.2d 938, 940 (Ariz. App. 1986) (cited in Hornwood v. Smith's Food King No. 1, 105 Nev. 188, 190, 772 P.2d 1284, 1285-86 (1989)). That said, "[w]here the meaning of a contract is ambiguous and resort to extrinsic evidence is required to ascertain the intention of the parties, summary judgment is inappropriate in the face of contradictory or conflicting evidence." Margrave v. Doormat Properties, Inc., 110 Nev. 824, 827, 878 P.2d 291, 293 (1994) (citations omitted).

The relevant contractual language with respect to the required use of space reads:

> Purpose And Use Of Authorized Area: The Authorized Area shall be used solely for the purpose of EXHIBITS, MEETINGS, FASHION SHOW, FOOD AND BEVERAGE FUNCTIONS, AND OTHER ACTIVITIES ANCILLARY TO THE MAGIC INTERNATIONAL SHOW, A TRADE SHOW, (hereinafter referred to as the "Event"). Id. at Ex. 3-5, p. 2.

The contract also states that Advanstar agreed to use Interface for certain ancillary services in connection with the Event including: electrical wiring and services; plumbing, gas and compressed air services; telephone systems wiring, services and operation; general cleaning and maintenance of Authorized Areas, and trash collection

11

and disposal; customer Service Center facilities; rigging; and food and beverage services. Id. at Ex. 3-5, Art. IV Sect. 4.2.

Advanstar argues that the terms of the ancillary use clause do not suggest that an event was required to be held at the Sands Expo at all. (Mot. Summ. J. (#127) 6-7.) Instead, Advanstar claims that the clause was meant to operate only when triggered by a decision to hold an event at the Sands Expo. Id. However, the Court finds the contractual language is ambiguous as to whether its terms are contingent; thus, reference to the parties intent would be helpful.

Here, Interface supports its contention that the ancillary use clause presupposes an event being held at the Sands Expo with the deposition testimony of Eric Bello, Interface's vice president of sales. In his deposition, Mr. Bello stated that Interface does not rent space on the assumption that the rental fee is all it would receive; instead, it relies on the revenue from ancillary uses to support its operation. (Opp. Mot. Summ. J. (#135) Ex. 53 at 173:7-12.) Thus, the ancillary use clause could be understood to assume the flooring of an event.

In addition, the terms of the authorized use clause suggest that some event associated with the MAGIC trade show would be held at the Sands Expo, a discreet portion of which is the WWDMAGIC show. Therefore, the language of the contract suggests that the Sands Expo was to be used for some event associated with the MAGIC trade show. And while Advanstar would argue that that conclusion requires a finding that no mandatory use clause exists, the Court disagrees.

It is true that the language suggests that multiple uses are acceptable, but the Court cannot conclude that the language is so unambiguous that such a finding is compelled as a matter of law. Rather, the Court finds that since the language does not exclude the possibility that the contract was meant to refer to WWDMAGIC as the event associated with the MAGIC trade show to be held at the Sands Expo, reference

to extrinsic evidence is required.

Having established that the contractual language is ambiguous, the Court now turns to the extrinsic evidence presented. Here, that evidence presents a conflict. For example, Sheldon Adelson, chairman of Interface group, states in his deposition that on August 14, 2003, Robert Krakoff informed him that Advanstar would keep its committment to Interface under the 2004 and 2005 AAE contracts, and that it would hold WWDMAGIC at the Sands Expo during those years. (Opp. Mot. Summ. J. (#135) Ex. 11, ¶ 4.) This evidence suggests that the commitment outlined by the 2004 and 2005 AAE contracts may have been understood to require Advanstar to hold WWDMAGIC at the Sands Expo. As such, a genuine issue of material fact exists with respect to the existence of an implied mandatory use provision.

Summary judgment is also not warranted on the theory that the liquidated damages clause is an exclusive remedy. Under Nevada state law, a liquidated damages clause is presumptively considered the exclusive remedy as chosen by the parties. See Phillips v. Mercer, 94 Nev. 279, 282, 579 P.2d 174, 176 (1978). However, the very nature of a presumption is that it is inconclusive; thus, a party may create a genuine issue of material fact as to the exclusivity of a liquidated damages clause by pointing to ambiguity in the clause itself. See Margrave, 110 Nev. at 878. Here, the liquidated damages clause reads in relevant part:

> If the Licensee cancels the Event covered by the License, the Licensee agrees to pay to the Licensor, as liquidated damages and not as a penalty an amount equal to the Reservation Fee and the remainder of the Basic Fee, as set forth in Article I. The parties hereto agree that such amounts constitute reasonable provision for liquidated damages and acknowledge that the amount of actual damages will be difficult to establish.

> In any event, and in addition to the foregoing, the Licensee also agrees to pay any monies due for Additional Fees and Additional Charges. *The foregoing shall not constitute Licensor's sole remedy for such cancellation and shall be in addition to such other legal and equitable*

> *rights and remedies as may be available to Licensor.* (Opp'n Mot. Summ. J. (#135) Ex. 3-5, Sect. 8.6) (emphasis added).

Though the liquidated damages clause is the presumptively exclusive remedy, the language of the clause itself suggests ambiguity. After all, the clause itself states that it is not meant to exclude other "legal and equitable rights . . . " Id. at Ex. 3-5, Sect. 8.6. As a result, this Court cannot grant summary judgment for Advanstar on the theory that further damages are foreclosed.

Turning now to Advanstar's claims that it is entitled to summary judgment on its counter claims, Advanstar argues that Interface's refusal to allow it to hold Community at the Sands Expo in August 2005 constituted a breach of the '05 license agreement. (Mot. Summ. J. (#127) 25-26.) However, since determining whether Interface committed a breach by refusing to let Advanstar hold Community at the Sands Expo turns on the existence of a mandatory use provision in the '05 agreement, and since there is a genuine issue of material fact as to whether such a provision exists, this Court cannot conclude that as a matter of law Interface beached the agreement by refusing to house the Community show. Therefore, summary judgment is not warranted on this ground.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (#103) is DENIED.

IT IS FURTHER ORDERED that Defendant's Counter Motion for Partial Summary Judgment (#113) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (#127) is DENIED.

IT IS SO ORDERED.

Dated this 23rd day of March, 2007.

_____
United States District Judge